No. 47,811

IN THE INTEREST OF: MARK ANTHONY HARRIS, A Minor, *Appellant.*

(544 P. 2d 1403)

Opinion filed January 24, 1976.

*Carolyn Frazee,* of the Wyandotte County Legal Aid Society, Inc., argued the cause, and *Richard C. Wallace,* of the same organization, was with her on the brief for the appellant.

*Vernon E. Lewis,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: This is an appeal from an order made under K. S. A. 38-808 (*b*) finding that the juvenile court should waive its jurisdiction over an allegedly delinquent child and ordering that he be

prosecuted as an adult. The primary issue in this court is whether the juvenile court, and the district court on appeal, may base a finding of "nonamenability" solely on hearsay evidence. We hold they may not.

A petition was filed in the Wyandotte county juvenile court alleging that on July 31, 1974, when he was seventeen years old, Mark Anthony Harris, a resident of Kansas City, Missouri, committed acts in Kansas which would constitute aggravated battery if committed by an adult. Before the juvenile court Harris' age and the criminal character of the alleged offense were conceded; the only issue was whether he was "amenable to the care, treatment and training program available through facilities of the juvenile court." (K. S. A. 38-808 [b].) The juvenile court found that he was not "amenable" and ordered him prosecuted as an adult.

Harris, through his guardian ad litem, appealed to the district court. There the matter was heard *de novo* (*In re Templeton*, 202 Kan. 89, 447 P. 2d 158) with the only issue again being his amenability to the juvenile court's program. The district court made an independent finding of nonamenability and Harris has appealed to this court.

Harris contends that the finding of nonamenability is not supported by "substantial evidence." That is the requirement of the statute and of our prior cases. (*In re Templeton*, supra; *In re Patterson, Payne and Dyer*, 210 Kan. 245, 499 P. 2d 1131.) In fact, he says, if only *admissible* evidence is considered the finding has no support at all.

At the district court hearing the state offered no witnesses. Instead it relied solely on two exhibits which had been introduced in the juvenile court. The first (Exhibit No. 2) was a two page letter read to the court by the prosecutor. It was on stationery of the Missouri State Board of Training Schools, signed by a David D. Logan in his capacity as "Group Leader, Group Home # 3." It recited that it was a report "compiled to serve as a general evaluation of treatment received by Mark Anthony Harris during his 3 month and 14 day stay at Group Home # 3 in Kansas City, Missouri." Counsel for Harris objected to the letter as hearsay. The court reserved its ruling on the objection and overruled it at the time it made its memorandum decision on the merits.

The second exhibit introduced (Exhibit No. 1) was in three parts. The first was an unsigned cover letter from the "Record Services, Jackson County [Missouri], Juvenile Court Services,"

enclosing the other two. The enclosures were a "Social History" compiled for the Jackson county juvenile court, and a "Face Sheet" purportedly reflecting Harris' numerous contacts with that court beginning in September, 1970. A hearsay objection was lodged against this exhibit, also. As to a possible claim of admissibility as an "official record" under K. S. A. 60-460 (*o*), it was pointed out that the Missouri court records lacked the authentication required by K. S. A. 60-465. The prosecutor suggested at the time that the required authentication was in the juvenile court records; it is now admitted that no such authentication existed. The trial court reserved its ruling on this objection also, and similarly overruled it in its memorandum decision.

The only witness who testified was Harris' mother, who was called on his behalf. Her direct testimony was limited to contradicting the prosecutor's unsworn oral allegation that Harris had at one time been in the Missouri juvenile facility at Boonville. On cross-examination she admitted he had apparently run away from the "group home" in Kansas City.

The juvenile code provides that "All witnesses shall be sworn on oath or affirmation, and the rules of the code of civil procedure relating to witnesses, including the right of cross-examination, shall apply to proceedings in the juvenile court." (K. S. A. 38-813.) In a dependency and neglect proceeding aimed at severing parental rights we held that a written psychiatric evaluation and a social worker's report were inadmissible hearsay under this statute. *In re Johnson,* 214 Kan. 780, 522 P. 2d 330. In that case we observed that the only provision of the code of civil procedure which preserves the right of cross-examination in civil cases is K. S. A. 60-460, dealing with hearsay. The reference in 38-813 to the code of civil procedure rules relating to cross-examination, we said, must be a reference to 60-460. We therefore applied the provisions of 60-460 to that proceeding under the juvenile code. In view of the unambiguous language of 38-813, we hold that K. S. A. 60-460 is applicable to all proceedings in the juvenile court.

Applying 60-460 here, the Missouri documents, being hearsay, were inadmissible unless they fell within one of its specific exceptions. Having conceded the lack of authentication required for "official records," the state relies in this court entirely on K. S. A. 60-460 (*m*):

"*Business entries and the like.* Writings offered as memoranda or records of acts, conditions or events to prove the facts stated therein, if the judge

finds that they were made in the regular course of a business at or about the time of the act, condition or event recorded, and that the sources of information from which made and the method and circumstances of their preparation were such as to indicate their trustworthiness . . ."

Looking first to the letter from "Group Leader" David Logan, we find it was a "report" being made to the Wyandotte county juvenile authorities, presumably for the purposes of the present proceeding. There was nothing in it from which the trial court could find that it was "made in the regular course of a business at or about the time of the act, condition or event recorded," as required by the statute. We conclude that the objection to this exhibit should have been sustained.

As to the Jackson county juvenile court records, even assuming that court was a "business" as defined in K. S. A. 60-459 (*f*), there was no attempt to establish foundation facts from which the trial court might find that the records qualified as "business entries." See *Pacific Indemnity Co. v. Berge*, 205 Kan. 755, 764, 473 P. 2d 48, and authorities cited. On the state of the record we think the objection to this exhibit should also have been sustained.

From what has been said it follows that the order must be reversed and the case remanded for a new hearing on the issue of amenability. There was simply no evidence apart from the two inadmissible exhibits to support a finding of nonamenability. At such a hearing the state will, we assume, be able to supply the procedural deficiencies in its evidence. At the same time if the substance of the "evaluation" contained in the Logan letter is again introduced, Harris will have an opportunity to cross-examine. He contends here that his "record" in Missouri contains serious inaccuracies which may be exposed by such cross-examination, and may lead the trial court to a different conclusion. As to this we cannot speculate, noting only that the contention itself points up the need for cross-examination. Compare, *In re Gault*, 387 U. S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428. On the other hand, the history of repeated antisocial behavior reflected in the state's exhibits, if not seriously impeached, might well support a finding of nonamenability. Again, we cannot speculate on what the record of a new hearing might reflect.

One additional point deserves comment. After filing his notice of appeal to this court Harris filed an affidavit of indigency and requested the appointment of counsel to represent him on appeal. The request was denied, with no reason for the denial being given.

On oral argument counsel for the state could suggest only that the denial was because this is a "civil" proceeding.

The quasi-criminal nature of juvenile proceedings was recognized by the United States Supreme Court in *In re Gault,* supra. The absolute right of the child to counsel in all such proceedings, regardless of the actions or desires of the child's parents or guardian, is recognized in K. S. A. 38-817 (*a*) (as amended). A waiver hearing was recognized as a "critically important" action in such proceedings in *Kent v. United States,* 383 U. S. 541, 16 L. Ed. 2d 84, 86 S. Ct. 1045. The reasons are obvious: if the waiver order is entered the juvenile proceedings are dismissed; the child is no longer subject to the protective custody of the juvenile court as *parens patriae* but is charged, tried and punished as an ordinary criminal. Thus while the waiver hearing may in one sense be deemed "civil," in another more meaningful sense it is but the first step in a potential criminal prosecution. A waiver order is appealable to this court as of right. *In re Templeton,* supra. In appeals as of right in criminal cases an indigent has a constitutional right to appointed counsel. *Douglas v. California,* 372 U. S. 353, 9 L. Ed. 2d 811, 83 S. Ct. 814. There is no suggestion that Harris was not indigent; he had appointed counsel in both the juvenile and district courts.

We think there is a strong analogy between a waiver hearing and a postconviction proceeding under K. S. A. 60-1507. While a 60-1507 proceeding is civil in nature, it is so closely related to the underlying criminal prosecution as to require the appointment of counsel on appeal even if none was required at the trial court level. See Rule No. 121 (*m*), 214 Kan. xxxix. As pointed out above, a waiver hearing is also closely related to a specific criminal prosecution, and the same policy considerations are applicable. In this case when Harris was denied appointed counsel he was forced to look for volunteers. Fortunately he found one in the Wyandotte County Legal Aid Society, and thereby secured able representation in this court. Although he can therefore show no prejudice, in our view he should not have been required to become a beggar for that which was his as a matter of right. We hold that it was error to deny Harris' application for the appointment of counsel to prosecute this appeal.

The waiver order is reversed and the case is remanded for further proceedings in the district court in accordance with the views set forth above.

APPROVED BY THE COURT.