663 P.2d 598

**In the Matter of the APPEAL IN PINAL COUNTY JUVENILE ACTION NO. J–169.**

**No. 2 CA–CIV 4688.**

Court of Appeals of Arizona, Division 2.

March 14, 1983.

1. These allegations were admitted in appellants' responsive pleading.

Robert C. Brown, Casa Grande, for appellant.

Roy A. Mendoza, Pinal County Atty. by Janet Keating, Florence, for appellee.

## OPINION

HATHAWAY, Judge.

Appellant, a 16½-year-old juvenile, appeals a juvenile court order transferring him to adult court for prosecution on charges of aggravated assault and attempted murder. He attacks the juvenile court's finding that he was not amenable to treatment or rehabilitation as a delinquent child through available facilities. Both his probation officer and a psychologist who had extensively examined and tested appellant testified that he was not amenable and recommended transfer to adult court. The probation officer testified as to the existing juvenile facilities in the state. The probation officer stated that VisionQuest was the best program available for the juvenile. However, he had previously been in the program for a year and had been terminated because he and his mother insisted. His attitude was that he would serve his time and he failed "to internalize the things he had been exposed to there." According to her, Adobe Mountain had a special program, called the Phoenix Program, which was designed for violent offenders. Appellant, however, did not meet the qualifications and therefore the program was not available to him. The probation officer testified that he was not eligible because:

"In order to be eligible for the Phoenix Program, he would have to have had another—in his previous history, another aggravated assault or another felony conviction."

The probation officer also testified that even if appellant were committed to the Department of Corrections and had the requisite qualifications for the Phoenix Program, it did not mean he would be accepted in the program.

The psychologist testified that the juvenile continued to have the potential to be aggressive intermittently. In order for him to be effectively rehabilitated, a period of one to one and one-half years would be necessary if the juvenile correctional system had the proper rehabilitation component for his intermittent explosive behavior. He also testified that the juvenile needed the following program:

"Well, it would involve a residential setting where the entire milieu, the entire environment around him would be a therapeutic kind of environment that would offer him on the one hand the controls and the structure and the limits set, but on the other hand would provide him with a sense of self worth and accomplishment, and he would need to then progress based on this environment and

his contacts with his peers and adults in the environment to a place where he could then become more and more independent and internalize some of the copying mechanisms that he developed from external stimuli."

To the best of his knowledge, he did not know of an existing treatment program such as he contemplated.

The record also reflects that the Phoenix Program for violent offenders had been explained to the juvenile judge, the deputy county attorney and juvenile probation officers by people involved in the program.

The juvenile judge expressly found that the offenses charged were extremely dangerous and violent; that the juvenile had a 2½-year history of disorderly conduct consisting of eight referrals, three of which were assaults; that VisionQuest was the best program available; that there were no available facilities through the Department of Corrections, and that there was no appropriate facility to handle the juvenile's explosive, life-threatening behavior.

In the *Matter of Appeal in Santa Cruz County, Juvenile Action No. J–1865,* 115 Ariz. 405, 565 P.2d 911 (App.1977), the only reason for the juvenile judge's conclusion that the juvenile was not amenable to rehabilitation through available facilities was the "policy" of the Department of Corrections to accept placement of juvenile aliens for no more than 30 days. We held that the department's policy of treating *alien* juveniles differently was unconstitutional. Appellant contends that he too is the victim of a "policy," i.e., he is not bad enough to be admitted to the Phoenix Program.

Whether juvenile court jurisdiction should be waived is committed to the discretion of the juvenile judge and absent an abuse of discretion, we do not interfere. *In re Pima County, Juvenile Action No. J–218–1,* 22 Ariz.App. 327, 527 P.2d 104 (1974). The record does not show that the Phoenix Program, i.e., its format, security personnel, etc., would in fact provide the proper environment for rehabilitation as described by the psychologist. The only evidence is that the program is designed for violent offenders and appellant matches the "psychological criteria." The juvenile judge could properly consider the juvenile's track record, his age, his past lack of amenability to the juvenile processes, and the dubious availability of an appropriate environment. *In re Maricopa County, Juvenile Action No. J–72804,* 18 Ariz.App. 560, 504 P.2d 501 (1972), and that the juvenile used a gun, which he was carrying in his back pocket, to shoot the next door neighbor. At the time of the transfer hearing, the juvenile was almost 16½ years old and therefore only 1½ years remained for possible treatment in the juvenile system. The record reflects that the juvenile's intermittent explosive behavior was the chief cause for concern. The juvenile judge could well have concluded that the juvenile could not be rehabilitated during the time frame of juvenile court jurisdiction. See *Matter of Pima Cty. Juv. Action No. 53358–6,* 126 Ariz. 417, 616 P.2d 92 (App.1980). We find no abuse of discretion in transferring appellant to adult court.

Affirmed.

HOWARD, C.J., and BIRDSALL, J., concur.